# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | |
|---|---|
| BRENDA ATUTONU KING, *et al.*,     ) | |
|                 ) | |
|         Plaintiffs,    ) | |
|                 ) | |
| vs.                   ) | Case No. |
|                 ) | |
| WYNDHAM VACATION OWNERSHIP,   ) | |
| INC., *et al.*,             ) | |
|                 ) | |
|         Defendants.    ) | |

## DEFENDANTS' JOINT NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendants Wyndham Vacation Ownership, Inc. and Wyndham Vacation Resorts, Inc. ("Defendants") remove this action pending in the Circuit Court of Taney County, Missouri to the United States District Court for the Western District of Missouri.

Thirty-three plaintiffs (just two from Missouri) bring eighteen separate and distinct claims (Counts I-XVIII) for purported and unrelated violations of the Missouri Merchandising Practices Act ("MMPA"). Each count is brought by either one individual, or two individuals who are husband and wife. No plaintiff asserts allegations in more than one count. Therefore, and for ease, this Notice divides the thirty-three plaintiffs into their respective eighteen counts, and will collectively refer to the eighteen "groups" of plaintiffs as "Plaintiffs" and singularly to one "group" as "Plaintiff."

The eighteen unrelated Plaintiffs are citizens of fifteen different states, with just two being non-diverse because of their Florida citizenship. Federal jurisdiction exists in this action, however, based on a straightforward personal jurisdiction analysis. Defendants are not subject to personal jurisdiction in Missouri with respect to all but at most six Plaintiffs, which does not

include the two non-diverse Florida Plaintiffs. Specifically, the other twelve Plaintiffs (which includes the two non-diverse Plaintiffs) assert causes of action that do not arise out of a transaction or commission of a tort within Missouri to invoke Missouri's long-arm statute, Mo. Rev. Stat. § 506.500. Specific jurisdiction therefore does not exist. Further, Defendants are incorporated in Delaware with their principal place of business in Florida, and therefore, are not considered "at home" in Missouri. General jurisdiction therefore does not exist. Accordingly, the claims brought by these twelve Plaintiffs (including the two non-diverse Florida Plaintiffs) fail for lack of personal jurisdiction. Their claims should be dismissed, leaving only the six diverse Plaintiffs whose claims are subject to federal diversity jurisdiction.

In the alternative, the two non-diverse Florida Defendants should be nonetheless severed under Rule 21. The Plaintiffs, who all reside throughout the United States, claim entirely separate unlawful acts by the Defendants at different locations and times when selling individual timeshares to each Plaintiff. The two claims brought by the two non-diverse Florida Plaintiffs are neither necessary nor indispensable to be joined under Rule 19, or have any relation or connection to any other claim to allow for permissive joinder under Rule 20. Accordingly, the non-diverse Florida Plaintiffs should be severed under Rule 21, thereby preserving diversity jurisdiction.

Should the Court examine subject matter jurisdiction first, removal is appropriate based on the fraudulent joinder of the two non-diverse Plaintiffs. Specifically, there is no reasonable basis in law or fact to support their MMPA claims due to each claim's lack of any connection to Missouri. Accordingly, the non-diverse Plaintiffs' claims should be disregarded for removal proposes and dismissed.

Further, removal is appropriate on a wholly separate ground as the non-diverse Plaintiffs were fraudulently misjoined in this matter for the same reasons severance is appropriate under Rule 21. For this separate reason, the non-diverse Plaintiffs' claims should be disregarded and dismissed.

In support of this Joint Notice and the grounds for removal, Defendants state as follows:

I.  **NATURE OF MATTER**

1.  On August 17, 2018, plaintiffs filed a civil action against Defendants in the Circuit Court of Taney County, Missouri, captioned as *Brenda Atutonu King, et al. v. Wyndham Vacation Ownership, Inc., et al.*, Case No. 1846-CC00155 (the "State Court Action"). *See* State Court Action documents, attached hereto as **Exhibits A**.

2.  A copy of the Summons and Petition were served on each Defendant on or about August 29, 2018. *See* Exhibit A.

3.  In the Petition, eighteen disparate Plaintiffs allege eighteen separate and distinct MMPA violations by the Defendants. *See* Exhibit A.  The eighteen Plaintiffs are unrelated and are citizens of fifteen different states. Only two of the Plaintiffs are not diverse.

4.  Defendants have not filed any responsive pleading to the Petition in the State Court Action.

II.  **REMOVAL IS PROPER BASED ON COMPLETE DIVERSITY**

5.  Under 28 U.S.C. § 1332, federal district courts have original jurisdiction over civil actions based on diversity of the parties.

6.  Under 28 U.S.C. §§ 1441 and 1446, Congress has granted defendants the statutory right to remove a case from a state court to a United States district court where that case originally could have been filed. 28 U.S.C. § 1441(a). Article III, Section 2 of the United States

Constitution extends original jurisdiction to federal courts over controversies "between citizens of different states." U.S. Const. art. III, § 2; *see also* 28 U.S.C. § 1332(a)(1).

7.   As shown below, removal is proper in this case as complete diversity jurisdiction exists between Plaintiffs and Defendants.

**A.   Complete Diversity of Citizenship Exists.**

8.   This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because this is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest.

*i.   All But Two Plaintiffs Are Diverse.*

9.   The Plaintiffs in this matter do not allege whether they are a citizen of any state. In instances like this, a court will typically require each plaintiff to set forth the particular state, if any, each plaintiff is a citizen. *See Witherspoon v. Bayer HealthCare Pharm. Inc.*, No. 4:13CV01912 ERW, 2013 WL 6069009, at *5 (E.D. Mo. Nov. 18, 2013) (requiring plaintiff to establish the particular state, if any, of which plaintiff is a citizen because the petition failed to allege whether plaintiff is a citizen of any state). Nonetheless, Defendants have painstakingly attempted to determine each Plaintiff's citizenship. The Court should nonetheless still require Plaintiffs to plead their citizenship.

10.   In Count I, Plaintiff Brenda Atutonu King asserts a single MMPA claim against Defendants. Upon information and belief, Plaintiff Brenda Atutonu King is an individual, citizen and resident of the State of Maryland. *See* Declaration of John Monaweck, attached hereto as **Exhibit B**.

4

11.	In Count II, Plaintiffs Robert and Mary Sacco, husband and wife, unite to assert a single MMPA claim against Defendants. Upon information and belief, Plaintiffs Robert and Mary Sacco are individuals, citizens and residents of the State of Ohio. *See* Exhibit B.

12.	In Count III, Plaintiffs Brenda and Bill Way, husband and wife, unite to assert a single MMPA claim against Defendants. Upon information and belief, Plaintiffs Brenda and Bill Way are individuals, citizens and residents of the State of North Carolina. *See* Exhibit B.

13.	In Count IV, Plaintiffs James and Mary Pounds, husband and wife, unite to assert a single MMPA claim against Defendants. Upon information and belief, Plaintiffs James and Mary Pounds are individuals, citizens and residents of the State of Missouri. *See* Exhibit B.

14.	In Count V, Plaintiff Valerie Mathews asserts a single MMPA claim against Defendants. Upon information and belief, Plaintiff Valerie Mathews is an individual, citizen and resident of the State of New York. *See* Exhibit B.

15.	In Count VI, Plaintiffs Ron and Gail Bergschneider, husband and wife, unite to assert a single MMPA claim against Defendants. Upon information and belief, Plaintiffs Ron and Gail Bergschneider are individuals, citizens and residents of the State of Illinois. *See* Exhibit B.

16.	In Count VII, Plaintiffs Steve and Rita Cole, husband and wife, unite to assert a single MMPA claim against Defendants. Upon information and belief, Plaintiffs Steve and Rita Cole are individuals, citizens and residents of the State of Oklahoma. *See* Exhibit B.

17.	In Count VIII, Plaintiffs Merle and Arlene Rudebusch, husband and wife, unite to assert a single MMPA claim against Defendants. Upon information and belief, Plaintiffs Merle and Arlene Rudebusch are individuals, citizens and residents of the State of Nebraska. *See* Exhibit B.

18. In Count IX, Plaintiffs James and Cheryl Owens, husband and wife, unite to assert a single MMPA claim against Defendants. Upon information and belief, Plaintiffs James and Cheryl Owens are individuals, citizens and residents of the State of Maryland. *See* Exhibit B.

19. In Count X, Plaintiffs Benjamin and Catalina Fuliar, husband and wife, unite to assert a single MMPA claim against Defendants. Upon information and belief, Plaintiffs Benjamin and Catalina Fuliar are individuals, citizens and residents of the State of California. *See* Exhibit B.

20. In Count XI, Plaintiffs Rob and Jennifer Reaves, husband and wife, unite to assert a single MMPA claim against Defendants. Upon information and belief, Plaintiffs Rob and Jennifer Reaves are individuals, citizens and residents of the State of Florida. *See* Exhibit B.

21. In Count XII, Plaintiff Frank Pimentel asserts a single MMPA claim against Defendants. Upon information and belief, Plaintiff Frank Pimentel is an individual, citizen and resident of the State of California. *See* Exhibit B.

22. In Count XIII, Plaintiffs Robert and Cynthia Shannon, husband and wife, unite to assert a single MMPA claim against Defendants. Upon information and belief, Plaintiffs Robert and Cynthia Shannon are individuals, citizens and residents of the State of Texas. *See* Exhibit B.

23. In Count XIV, Plaintiffs Thomas Kohlbeck and Gay Hartfield,[1] husband and wife, unite to assert a single MMPA claim against Defendants. Upon information and belief, Plaintiffs Thomas Kohlbeck and Gay Hartfield are individuals, citizens and residents of the State of Minnesota. *See* Exhibit B.

24. In Count XV, Plaintiffs Richard and Loretta Nance, husband and wife, unite to assert a single MMPA claim against Defendants. Upon information and belief, Plaintiffs Richard

---

[1] Upon information and belief, Gay's surname is incorrectly spelled "Hartfield" and, instead, is actually spelled "Hartfiel." *See* Exhibit B.

6

and Loretta Nance are individuals, citizens and residents of the State of South Carolina. *See* Exhibit B.

25.      In Count XVI, Plaintiffs Roger and Rita Leake, husband and wife, unite to assert a single MMPA claim against Defendants. Upon information and belief, Plaintiffs Roger and Rita Leake are individuals, citizens and residents of the State of Kentucky. *See* Exhibit B.

26.      In Count XVII, Plaintiffs Cortez and Magaly Puryear, husband and wife, unite to assert a single MMPA claim against Defendants. Upon information and belief, Plaintiffs Cortez and Magaly Puryear are individuals, citizens and residents of the States of Maryland and Florida. *See* Exhibit B.

27.      In Count XVIII, Plaintiffs Dennis and Christina Tobin, husband and wife, unite to assert a single MMPA claim against Defendants. Upon information and belief, Plaintiffs Dennis and Christina Tobin are individuals, citizens and residents of the State of Pennsylvania. *See* Exhibit B.

28.      Defendant Wyndham Vacation Ownership, Inc. is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business in the State of Florida. *See* Exhibit B. Defendant Wyndham Vacation Ownership, Inc. is therefore a citizen of the State of Delaware and Florida. *See* 28 U.S.C. § 1332(c).

29.      Defendant Wyndham Vacation Resorts, Inc. is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business in the State of Florida. *See* Exhibit B. Defendant Wyndham Vacation Resorts, Inc. is therefore a citizen of the State of Delaware and Florida. *See* 28 U.S.C. § 1332(c).

30.     Based on the above, only Plaintiffs Rob and Jennifer Reaves (Count XI) and Plaintiffs Cortez and Magaly Puryear (Count XVII) are non-diverse as they are citizens of the same state as Defendants' principal place of business—Florida.

ii.     ***The Court Should Dismiss the Claims of All Plaintiffs Whose Claims are Unrelated to Missouri, Creating Complete Diversity.[2]***

31.     Removal is proper based on diversity of citizenship under 28 U.S.C. § 1332(a) because complete diversity exists between Defendants and the only six Plaintiffs asserting claims that give rise to this Court's personal jurisdiction over Defendants. Despite Plaintiffs' conclusory averment that "all relevant transactions to this Petition occurred in the County of Taney, State of Missouri,"[3] Defendants' preliminary investigation revealed this to be incorrect. *See* Exhibit B. Indeed, the Defendants are unaware of any purported transaction, tort or act as alleged in Plaintiffs' Petition to have occurred in the State of Missouri as to the remaining twelve Plaintiffs—including the two non-diverse Florida Plaintiffs. *Id.* Therefore, the Court can and should dismiss these Plaintiffs' claims for lack of personal jurisdiction prior to assessing the question of subject-matter jurisdiction. Doing so would create complete diversity between each Defendant and the remaining six Plaintiffs, satisfying the requirements of 28 U.S.C. § 1332(a).

32.     As recently explained in *Ristesund v. Johnson & Johnson*:

> Due process of the law is enshrined in both the United States and Missouri constitutions, U.S. Const. amend. V; U.S. Const. amend XIV, Sec. 1; Mo. Const. art. I, Sec. 10. Due process of the law requires that each court have personal jurisdiction over a defendant before a judgment is valid. *See Bueneman*, 52 S.W.3d at 58. Personal jurisdiction is a legal concept designating when the court has control over a defendant and the ability to render a valid

---

[2] Defendants intend to move to dismiss the claims of all plaintiffs whose claims have no connection to Missouri for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, among other grounds.

[3] This vague assertion violates Missouri's fact pleading requirement. *Gibson v. Brewer*, 952 S.W.2d 239, 245 (Mo. banc 1997); Missouri Rule 55.05. Nonetheless, and at the very least, this Court should allow limited jurisdictional discovery on this issue if Plaintiffs refute that the transactions, torts or acts as alleged in Plaintiffs' Petition as to the remaining twelve Plaintiffs—including the two non-diverse Florida Plaintiffs—did not occur in Missouri.

> judgment. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66
> S.Ct. 154, 90 L.Ed. 95 (1945). Courts recognize two categories of
> personal jurisdiction: general and specific. *Goodyear Dunlop Tires
> Operations, S.A. v. Brown*, 564 U.S. 915, 923-4, 131 S.Ct. 2846,
> 180 L.Ed.2d 796 (2011).

No. ED 104887, 2018 WL 3193652, at *2 (Mo. App. E.D. June 29, 2018). Neither general nor specific jurisdiction is present here.

33.   *First*, Defendants are not subject to general jurisdiction in Missouri. As the United States Supreme Court has made clear, general jurisdiction exists over a non-resident defendant only when its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (emphasis added) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). A corporation generally is "at home" only in its place of incorporation and principal place of business. *Id.* at 137-139. As the Supreme Court more recently reiterated, "in-state business . . . does not suffice to permit the assertion of general jurisdiction." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017); *see also State ex rel. Norfolk Southern Railway Company v. Dolan*, 512 S.W.3d 41, 48 (Mo. 2017) ("Norfolk's activities in Missouri are only a very small part of its overall activities, and not of the nature that makes Missouri its de facto principal place of business. Missouri courts may not assert general jurisdiction over Norfolk in the underlying case."). For instance, in *Tyrrell* the Supreme Court concluded that defendant BNSF's activities were not "so substantial and of such a nature as to render the corporation at home in [Montana]" because it was neither incorporated in nor had its principal place of business in Montana, even though it had more than 2,000 miles of railroad tracks and more than 2,000 employees in Montana. *Tyrrell*, 137 S. Ct. at 1553.

9

34.     Here, neither Defendant is incorporated or headquartered in Missouri. *See* Exhibit B. In fact, less than six percent (6%) of Defendants business is conducted in Missouri as compared to their business practices worldwide. *See id.* Further, Plaintiffs' Petition does not contain sufficient allegations, if at all, for the Court to find Defendants "at home" in Missouri. Accordingly, Plaintiffs come nowhere close to establishing general jurisdiction under the demanding standards set forth in *Daimler* and its progeny.

35.     **Second**, Defendants are also not subject to specific jurisdiction in Missouri as to the claims brought by the non-diverse Plaintiffs. Specific jurisdiction can only be exercised consistent with due process where the defendant's in-state activities have " 'g[iven] rise to the liabilities sued on.' " *Daimler*, 571 U.S. at 138 (citation omitted). Indeed, the Supreme Court recently explained in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, ("*BMS*") that:

> [i]n order for a state court to exercise specific jurisdiction, the *suit must arise out of or relate to the defendant's contacts with the forum*. In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. For this reason, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.

137 S. Ct. 1773, 1780, 198 L. Ed. 2d 395 (2017) (citations, quotation marks and brackets omitted).

36.     In *BMS*, the Supreme Court held that specific jurisdiction lacked over defendants with respect to product-defect claims regarding a pharmaceutical drug, Plavix, asserted by plaintiffs whose claims had no connection to the forum where the action commenced, regardless of whether those plaintiffs join their claims with plaintiffs whose claims did have some connection with the forum.  In that case, more than 600 plaintiffs, most of whom were not

California residents, sued Bristol-Myers Squibb in state court. Bristol-Myers Squibb moved to dismiss the nonresidents' claims on the ground that the court lacked personal jurisdiction. On appeal, the California Supreme Court concluded that the trial court did have specific personal jurisdiction over the claims, finding " 'BMS's extensive contacts with California,' " combined with the fact that the "claims of the nonresidents were similar in several ways to the claims of the California residents" was sufficient to "permit the exercise of specific jurisdiction." *Id.* at 1779 (citation omitted). The United States Supreme Court reversed, rejecting the California Supreme Court's approach as "resembl[ing] a loose and spurious form of general jurisdiction." *Id.* at 1781. It further criticized the holding for failing to "identify[] any adequate link between the State and the nonresidents' claims." *Id.* at 1781. As the Court explained,

> the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California – and allegedly sustained the same injuries as did the nonresidents – does not allow the State to assert specific jurisdiction over the nonresidents' claims. . . . This remains true even when third parties (here, the plaintiffs who reside in California) can bring claims similar to those brought by the nonresidents. . . . What is needed – and what is missing here – is a connection between the forum and the specific claims at issue.

*Id.* at 1781.

37.     Based on *BMS*, each Plaintiff must independently establish personal jurisdiction. *See Ristesund*, 2018 WL 3193652, at *1-2 ("In [*BMS*], the U.S. Supreme Court held that a non-resident plaintiff may not establish personal jurisdiction simply by joining his or her claims to a resident's pleading. *BMS* requires that each plaintiff independently establish a basis for personal jurisdiction." (citations omitted)).

38.     Based on the heightened standard to find specific jurisdiction reinforced by *BMS*, Missouri courts have also subsequently recognized that *BMS* will largely prevent joining in-state

and out-of-state plaintiffs in a single action. *Barron v. Abbott Labs., Inc.*, 529 S.W.3d 795, 801 (Mo. 2017) (P. Wilson, J., concurring) (recognizing that "the use of a Rule 52.05(a) joinder to combine multiple in-state and out-of-state plaintiffs in a single action largely will be prevented in the future by [*BMS*].").

39.     In Missouri, "courts may exercise specific personal jurisdiction over a defendant for claims arising out of, or relating to, the defendant's activities in Missouri covered by the long-arm statute. *Ristesund*, 2018 WL 3193652, at *1-2 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); Mo. Rev. Stat. § 506.500). Under Missouri's long-arm statute, a party submits to jurisdiction in Missouri "as to any cause of action arising from," *inter alia*, the "transaction of any business" or "commission of a tortious act" within Missouri. Mo. Rev. Stat. § 506.500.1. The long-arm statute "operates within the specific categories enumerated in the statutes to the full extent permitted by the Due Process Clause." *N.C.C. Motorsports, Inc. v. K-VA-T Food Stores, Inc.*, 975 F. Supp. 2d 993, 998 (E.D. Mo. 2013) (internal quotation marks and citation omitted). Plaintiffs Ron and Gail Bergschneider (Count VI), Steve and Rita Cole (Count VII), Merle and Arlene Rudebusch (Count VIII), Thomas Kohlbeck and Gay Hartfield (Count XIV), Roger and Rita Leake (Count XVI), and Dennis and Christina Tobin (Count XVIII) may have purchased their timeshare in Missouri, though the Petition is wholly silent on this fact. *See* Exhibit B. Thus, if these transactions and/or related torts did indeed occur in Missouri, Missouri has personal jurisdiction over these claims based on its long-arm statute. Missouri's long-arm statute does not apply, however, to the remaining twelve Plaintiffs—including the two non-diverse Florida Plaintiffs—whose claims did not arise in any respect in Missouri. *See* Exhibit B.

40.     Specific jurisdiction does not exist here over the two non-diverse Florida Plaintiffs. Only the six Plaintiffs named above potentially allege injuries that could have arisen from the Defendants' activities in Missouri. The remaining Plaintiffs' claims have **absolutely no connection at all with Missouri**.  As *BMS* recognized, the mere fact that twelve Plaintiffs whose claims lack any connection to Missouri, including the two non-diverse Florida Plaintiffs, have joined their claims with six Plaintiffs whose claims may have arisen in Missouri does not suffice to give rise to personal jurisdiction over the Defendants with respect to their claims. Consequently, Defendants are not subject to specific jurisdiction in Missouri as to these twelve Plaintiffs.  *See BMS*, 137 S. Ct. at 1791.

41.     ***Third***, this Court may decide the issue of personal jurisdiction before determining whether it has subject-matter jurisdiction. The Supreme Court has explained that "there is no unyielding jurisdictional hierarchy" and that after a case is removed, the federal court may decide a "straightforward personal jurisdiction issue presenting no complex question of state law" prior to deciding whether it has subject-matter jurisdiction.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578, 588 (1999); *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (explaining that "there is no mandatory 'sequencing of jurisdictional issues'" and that "[i]n appropriate circumstances . . . a court may dismiss for lack of personal jurisdiction without first establishing subject-matter jurisdiction") (citing *Ruhrgas*, 526 U.S. at 578, 584); *Crawford v. F. Hoffman-LaRoche Ltd.*, 267 F.3d 760, 764 (8th Cir. 2001) ("[C]ertain threshold issues . . . may be taken up without a finding of subject-matter jurisdiction, provided that the threshold issue is simple when compared with the issue of subject-matter jurisdiction."). Considering straightforward personal jurisdiction questions, as here, is what this District and other federal courts have done, even before *BMS* clarified the law on personal

13

jurisdiction in multi-plaintiff cases. *See Alvarracin v. Volume Servs., Inc.*, No. 16-06115-CV-SJ-SWH, 2017 WL 1842701, at *2 (W.D. Mo. May 4, 2017) (considering defendants' motion to dismiss for lack of personal jurisdiction **before** plaintiff's motion to remand because the subject matter jurisdiction issues were not as clear cut as the straightforward personal jurisdiction issue); *InSite Platform Partners, Inc. v. Orbcomm, Inc.*, No. 16-0491-CV-W-BP, 2017 WL 4844900, at *1 (W.D. Mo. Oct. 26, 2017) ("To the extent that Comtech's argument is related to the Court's subject matter jurisdiction, the Court is empowered to bypass the issue and address Comtech's arguments regarding personal jurisdiction first." (citing *Ruhrgas AG*, 526 U.S. at 584-85)); *see also In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, 164 F. Supp. 3d 1040 (N.D. Ill. 2016), *reconsidered in part on other grounds*, No. 14 C 1748, 2016 WL 861213 (N.D. Ill. Mar. 7, 2016) (considering defendants' personal jurisdiction question first because it was more straightforward and did not present a complex question of state law); *In re Zofran (Ondansetron) Prods. Liab. Litig.*, No. 1:15-cv-13760-FDS, 2016 WL 2349105, at *3-5 (D. Mass. May 4, 2016) (deciding personal jurisdiction first and denying motion to remand where defendant was not subject to general jurisdiction in Missouri and non-diverse plaintiff's claims did not arise out of the defendant's contacts with Missouri); *Guillette v. PD-RX Pharm. Inc.*, No. 5:15-CV-00564-R, 2016 WL 3094073, at *2, *5 (W.D. Okla. June 1, 2016) (deciding "straightforward" personal jurisdiction issue before determining subject-matter jurisdiction and dismissing claims of non-Oklahoma plaintiffs who allegedly were injured from ingesting propoxyphene-containing products in other states); *Manning v. PD-Rx Pharm. Inc.*, No. 5:15-cv-00566-R, 2016 WL 3094075, at *2, *5 (W.D. Okla. June 1, 2016) (same); *Nauman v. PD-RX Pharm. Inc.*, No. 5:15-cv-00567-R, 2016 WL 3094081, at *2, *5 (W.D. Okla. June 1, 2016) (same).

42.     The Court should follow the same approach here. As explained above, the personal jurisdiction issue here is straightforward because, under binding Supreme Court precedent, no Defendant is subject to general jurisdiction in Missouri, and Missouri courts do not have specific jurisdiction over Defendants as to the claims of the remaining twelve Plaintiffs, including the two non-diverse Florida Plaintiffs. Accordingly, the Court should rule on this straightforward issue first and dismiss those Plaintiffs' claims, creating complete diversity of citizenship between defendants and the remaining plaintiffs.

### iii.     *Should the Court Not Address the Straightforward Personal Jurisdiction Issue First, It Should Sever the Non-Diverse Florida Plaintiffs Under Rule 21.*

43.     Even if the two non-diverse Florida Plaintiffs hinder complete diversity, removal based on diversity jurisdiction is nonetheless proper if these claims are severed under Rule 21. These two Plaintiffs[4] are severable under Rule 21 if they are either unnecessary or dispensable under Rule 19, or if the claims brought by them are sufficiently distinct from claims by the other Plaintiffs under Rule 20. Here, the non-diverse Florida Plaintiffs should be severed from this lawsuit on both grounds, each of which preserves diversity jurisdiction.

44.     "[I]it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989); *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1039 (8th Cir. 1999) ("Rule 21 is often used to allow federal courts to escape a multi-party jurisdictional quandary."); *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1271 (7th Cir. 1996) ("The district court is entitled to 'save' diversity jurisdiction by dismissing

---

[4] Defendant recognizes that all twelve Plaintiffs whose claims have no connection to Missouri to establish personal jurisdiction can be severed as well for the same reasons set forth in this Section. Nonetheless, for removal purposes, only the two Florida Plaintiffs may destroy diversity and are at issue at this time. Defendants reserve the right to later sever the other ten Plaintiffs should they not be dismissed for lack of personal jurisdiction.

15

dispensable, non-diverse parties during the pendency of the proceedings."); *Johnson v. Welsh Equip., Inc.*, 518 F. Supp. 2d 1080, 1086 (D. Minn. 2007) (dismissing three non-diverse parties because "[a] district court may cure a jurisdictional defect by removing a dispensable nondiverse party from a suit"). Indeed, the dismissal of a non-diverse party to cure a jurisdictional defect has "long been an exception to the time-of-filing rule." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572 (2004); *see e.g.*, *Sullivan v. Calvert Mem'l Hosp.*, 117 F. Supp. 3d 702, 705-07 (D. Md. 2015) (severing and dropping a non-diverse party under Rule 21); *McElroy v. Hamilton Cty. Bd. of Educ.*, No. 1:12-cv-297, 2012 WL 12871469, at *2-3 (E.D. Tenn. Dec. 20, 2012) (same). " '[T]he question always is, or should be, when objection is taken to the jurisdiction of the court by reason of the citizenship of some of the parties, whether . . . they are indispensable parties, for if their interests are severable and a decree without prejudice to their rights may be made, the jurisdiction of the court **should be retained and the suit dismissed as to them**." *Id.* (quoting *Horn v. Lockhart,* 17 Wall. 570, 579, 21 L.Ed. 657 (1873)).

45.     Under a straightforward application of Rule 21, this Court should sever the non-diverse Florida Plaintiffs to preserve diversity jurisdiction because they are unnecessary and dispensable parties under Rule 19.  Rule 19(a)(1) requires parties to be joined if:

> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
>
> **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

16

None of the above-mentioned requirements are present here. Based on the separate counts of the Petition, each of the Plaintiff's claims are materially distinct from each other. There is no material overlap between factual allegations contained in each separate count. As such, severing the non-diverse Plaintiffs' claims will not impair or impede the remaining Plaintiffs' claims. Further, because each count is separate, neither Plaintiffs nor Defendants will be at risk of incurring double, multiple, or otherwise inconsistent obligations. Finally, complete relief afforded to each Plaintiff can still be accomplished without the non-diverse Florida Plaintiffs. Thus, the two non-diverse Plaintiffs are not necessary parties to the resolution of the sixteen other claims.

46.     In addition to Rule 19, the claims by the non-diverse Florida Plaintiffs are also misjoined under Rule 20, which provides another basis for severance. Rule 21 permits severance here because "[p]ersons may join in one action plaintiffs *if*: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; ***and*** (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a) (emphasis added); *see Loeffelbein v. Milberg Weiss Bershad Hynes & Lerach, LLP*, No. Civ.A. 02-2435-CM, 2003 WL 21313957, at *5 (D. Kan. May 23, 2003) ("Rule 21 is a mechanism for correcting . . . the misjoinder . . . of parties or claims" which "arises when the claims and parties fail to satisfy any of the conditions of permissive joinder under Rule 20(a)." (citation omitted)); *see also e.g.*, *State Farm Mut. Auto. Ins. Co.*, No. 4:08CV345-RH/WCS, 2008 WL 11366408, at *3 (N.D. Fla. Nov. 10, 2008) (severing claims against two Florida defendants). When examining Rule 20, the same transaction or occurrence standard only includes those claims that are "logically related." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974).

17

47.     Here, the only similarity between all Plaintiffs is that they assert, though separately, MMPA claims against the same Defendants. Yet, that is where the similarities end. Again, the non-diverse Florida Plaintiffs' claims are separate and distinct from the claims brought by all other Plaintiffs. The separate claims do not seek relief jointly, severally, or in the alternative. There is no logically related transaction or occurrence that joins them together. Rather, Plaintiffs Ron and Jennifer Reaves' (one of the non-diverse Florida Plaintiffs) claim appears to arise out of the following separate timeshare purchases (location and date):

- Fairfield Plantation, GA on June 5, 2008
- Fairfield Plantation, GA on July 20, 1986
- Sea Gardens, FL on August 28, 1999
- Palm Aire, FL on November 9, 2003
- Bonnet Creek, FL on August 10, 2015
- Park City, UT on July 2, 2016

*See* Exhibit B. Plaintiffs Cortex and Magaly Puryear's (the other non-diverse Florida Plaintiff) claim appears to arise out of the following separate timeshare purchase at Alexandria, VA on November 3, 1998. *See id.* No other Plaintiff shares the same purchase dates at the same location. *See id.* Therefore, severance is appropriate because the *factual basis* for each of the non-diverse Florida Plaintiffs' claims against the Defendants are separate and distinct from all other Plaintiffs' claims.

> iv.     ***Should the Court Analyze Subject Matter Jurisdiction Issues Before Addressing the Straightforward Personal Jurisdiction Issue, Federal Jurisdiction Still Exists Because the Citizenship of The Two Non-Diverse Florida Plaintiffs Must Be Disregarded As They Were Fraudulently Joined.***

48.     As an alternative to severance under Rule 21, the citizenship of the non-diverse Florida Plaintiffs should be ignored for purposes of diversity jurisdiction under the fraudulent joinder doctrine. "[T]here is a 'fraudulent joinder' caveat to the principle that a non-diverse plaintiff defeats federal diversity jurisdiction." *Foslip Pharm., Inc. v. Metabolife Int'l, Inc.*, 92 F.

Supp. 2d 891, 902 (N.D. Iowa 2000) (applying fraudulent joinder to plaintiffs) (citing *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 404 (8th Cir. 1977)).[5] "The doctrine of fraudulent joinder allows a district court to assume jurisdiction over a facially nondiverse case temporarily and, if there is no reasonable basis for the imposition of liability under state law, dismiss the nondiverse party from the case and retain subject matter jurisdiction over the remaining claims." *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1031 (8th Cir. 2012).

49.     Joinder is fraudulent where state law precludes or otherwise does not support a cause of action against the defendant. *Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 893 (8th Cir. 2014) (affirming denial of plaintiffs' motion to remand based on fraudulent joinder because plaintiffs' claims, including a MMPA claim, lacked any reasonable basis in fact and law). "To prove fraudulent joinder of a diversity destroying plaintiff, the defendant seeking removal must prove that the diversity destroying plaintiff's claim has "no reasonable basis in fact and law." *Orrick v. Smithkline Beecham Corp.*, No. 4:13CV2149 SNLJ, 2014 WL 3956547, at *3 (E.D. Mo. Aug. 13, 2014); *Caranchini v. Kozeny & McCubbin, LLC*, No. 4:11-CV-0464-DGK, 2011 WL 5921364, at *4 (W.D. Mo. Nov. 28, 2011) ("If there is no reasonable basis in fact or law for the claim, the court ignores the citizenship of the fraudulently joined defendant for purposes of determining diversity.").

50.     Though fraudulent joinder more commonly arises in the context of the fraudulent joinder of defendants, the courts within this Circuit are among the majority of courts that recognize the doctrine of fraudulent joinder of plaintiffs. *See Med. Bow Coal Co.*, 556 F.2d at 404 (concluding, in the context of a contract case, that if the plaintiff is not "the person who, under governing substantive law, is entitled to enforce the right asserted" then "his or its

---

[5] It should be noted that *Foslip* addressed defendants' straightforward personal jurisdiction arguments raised in their motion to dismiss **before** subject matter jurisdiction issues raised in plaintiffs' motion to remand. *Foslip Pharm., Inc.*, 92 F. Supp. 2d at 898-899.

presence in the case may be ignored in determining jurisdiction"); *Orrick*, 2014 WL 3956547, at *3 (analyzing fraudulent joinder as to a non-diverse plaintiff); *Witherspoon v. Bayer HealthCare Phar., Inc.*, No. 4:13CV01912 ERW, 2013 WL 6069009, at *5 (E.D. Mo. Nov. 18, 2013) (finding that a diversity-destroying plaintiff was fraudulently joined because her claims had "no reasonable basis in fact and law"); *Foslip Pharm., Inc.*, 92 F. Supp. 2d at 904 ("This court finds that the 'real party in interest' test articulated in *Medicine Bow Coal Company* is analogous to, but perhaps even more expansive than, the standard as articulated by other courts that a plaintiff is not fraudulently joined unless there is no possibility that the plaintiff would be able to establish a cause of action against the defendant in state court.").[6]

51.     The non-diverse Florida Plaintiffs are fraudulently joined because they have zero basis in law or fact to recover under the MMPA. The MMPA provides that "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, ***in or from the state of Missouri***, is declared to be an unlawful practice." Mo. Rev. Stat. § 407.020 (emphasis added). Accordingly, the alleged unlawful act must have a connection to the state of Missouri. *Neeley v. Wolters Kluwer Health, Inc.*, No. 4:11-CV-325 JAR, 2013 WL 3929059, at *16 (E.D. Mo. July 29, 2013) (dismissing MMPA claim because the alleged activity and fraud had

---

[6] *See also Taco Bell Corp. v. Dairy Farmers of Am., Inc.*, 727 F. Supp. 2d 604, 607 (W.D. Ky. 2010), stating:

> For the following reasons, this Court sides with the majority view. There is no significant difference between fraudulent joinder of plaintiffs and fraudulent joinder of defendants. The primary purpose of fraudulent joinder is to ensure that plaintiffs do not avoid diversity jurisdiction by pleading illegitimate claims involving non-diverse parties. That purpose is fulfilled both where the plaintiff improperly sues non-diverse defendants against whom it has no viable claim and where the plaintiff joins additional non-diverse plaintiffs who have no viable claims.

(citation omitted).

20

absolutely no connection "in or from the state of Missouri"); *State ex rel. Nixon v. Estes,* 108 S.W.3d at 800 ("it is not so much the definition of 'trade or commerce' which ultimately establishes the reach of section 407.020.1 as it is its requirement that the trade or commerce originate or occur 'in or from the state of Missouri' ").

52.    As explained by the Eighth Circuit:

> The Supreme Court of Missouri has described the MMPA's language regarding unlawful merchandising as "unrestricted, all-encompassing and exceedingly broad." *Ports Petroleum Co. of Ohio v. Nixon,* 37 S.W.3d 237, 240 (Mo. banc 2001). That court, however, has not decided whether the language is broad enough to cover transactions taking place outside of Missouri. The Missouri Court of Appeals has concluded that the MMPA may reach consumers in states other than Missouri who succumb to fraudulent advertising or deceptive practices. *State ex rel. Nixon v. Estes,* 108 S.W.3d 795, 801 (Mo. Ct. App. 2003). In *Estes,* the fraudulent business misleadingly advertised vending machines and fraudulently promised tens of thousands of dollars in profit. *Id.* at 796-97. But that business had numerous ties to Missouri: It was in Missouri that the defendant had operated his fraudulent business, received signed sales agreements and wire transfers from the customers, held the ill-gotten gains in Missouri bank accounts, and maintained company offices from which he communicated with customers. *Id.* at 801. Those facts, the court ruled, showed that Estes had advertised and sold the fraudulent machines "in trade or commerce . . . in or from the state of Missouri." *Id.* at 800–01 (quoting Mo. Stat. § 407.020.1). Thus, the claims of those out-of-state plaintiffs could be brought under the MMPA.

*Perras v. H & R Block*, 789 F.3d 914, 917–18 (8th Cir. 2015) (Because "[t]here is no other connection between the [MMPA] claims in the class action and Missouri [as] the acts of commerce that [plaintiff] grieves did not occur in, or originate from, the State of Missouri," the law applicable to each class member would be the consumer-protection statute of that member's state, not the MMPA).

53.    Missouri has absolutely no connection to the non-diverse Florida Plaintiffs or their claims. Indeed, these Plaintiffs are not from Missouri and the alleged fraudulent acts did not

21

occur or originate in Missouri. *See* Exhibit B. Based on the lack of ***any*** connection whatsoever between these non-diverse Plaintiffs and Missouri, there is no reasonable basis in law or fact to support their single MMPA claim, which requires the unlawful act to occur "in or from the state of Missouri." Mo. Rev. Stat. § 407.020. Accordingly, the non-diverse Florida Plaintiffs are fraudulently joined and should not be considered for complete diversity purposes, and should be dismissed from this action.

        **v.**     ***As a Wholly Separate Ground for Subject Matter Jurisdiction—Should the Court Decline to Address the Straightforward Personal Jurisdiction Issue First—Federal Jurisdiction Exists Because the Citizenship of The Two Non-Diverse Florida Plaintiffs Must Be Disregarded Based on Fraudulently Misjoinder.***

54.    The citizenship of the non-diverse Florida should also be ignored for purposes of diversity jurisdiction under the fraudulent misjoinder doctrine. As explained by the Eighth Circuit Court of Appeals,

> Fraudulent misjoinder occurs when a plaintiff sues a diverse defendant in state court and joins a viable claim involving a nondiverse party, or a resident defendant, even though the plaintiff has no reasonable procedural basis to join them in one action because the claims bear no relation to each other. In such cases, some courts have concluded that diversity is not defeated where the claim that destroys diversity has 'no real connection with the controversy' involving the claims that would qualify for diversity jurisdiction.

*In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010); *see also Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) ("A defendant's right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." (quotation marks omitted)), *abrogated on another ground in Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). While the Eighth Circuit has declined to adopt or reject the fraudulent misjoinder doctrine, other Courts in this District have examined it. *In re Prempro*, 591 F.3d at 622 ("We make no judgment on the propriety of the doctrine in this case,

and decline to either adopt or reject it at this time."); *Kerns v. Fed. Ins. Co.*, No. 13-00664-CV-W-BP, 2013 WL 12147745, at *1 (W.D. Mo. Nov. 7, 2013) (analyzing the fraudulent misjoinder doctrine but, unlike here, concluding that the parties could be joined under Rule 20). Further, courts have applied fraudulent joinder to plaintiffs as well as defendants. *In re Diet Drugs*, No. 1203, 1999 WL 554584, at *3 (E.D. Pa. July 16, 1999) ("The court notes that although the facts of *Tapscott* concerned the misjoinder of certain defendants, the reasoning of that case has been applied to find that the egregious misjoinder of plaintiffs may also constitute fraudulent joinder.") (cited in *In re Prempro Prod. Liab. Litig.*, 591 F.3d at 621).

55.     Here, as thoroughly explained above, the non-diverse Florida Plaintiffs' claims are separate and distinct from all Plaintiffs' claims. There simply is no logical relationship between the Plaintiffs. Thus, the only plausible basis for these two Plaintiffs to be included in this lawsuit is solely to defeat diversity. Accordingly, these Plaintiffs are fraudulently misjoined and should not be considered for complete diversity purposes.

###     B.     <u>The Jurisdictional Amount is Satisfied.</u>

56.     "The district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000." *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002). The party seeking removal has the burden to prove the requisite amount by a preponderance of the evidence. *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009) (citation omitted). Once this burden is met, the opponent to removal must "establish to a legal certainty that the claim is for less than the requisite amount." *Id.* Further, " '[w]hen two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several

plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount.' " *Burns v. Massachusetts Mut. Life Ins. Co.*, 820 F.2d 246, 250 (8th Cir. 1987) (citations omitted).

57. Plaintiffs' Petition seeks damages for each of the separate and distinct MMPA claims, including actual and incidental consequential damages, punitive damages, and attorney's fees. *See also* Mo. Rev. Stat. § 407.025.1 (allowing a plaintiff to recover compensatory and punitive damages, along with attorney's fees on a MMPA claim). When analyzing the jurisdictional amount, punitive damages and attorney's fees may be considered along with the actual damages. *See Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount."); *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 766-67 (8th Cir. 2001) ("Punitive damages, of course, may be used to establish diversity jurisdiction. . . . [Also,] [s]tatutory attorney fees do count toward the jurisdictional minimum for diversity jurisdiction."). Further, the majority rule among courts in the Eighth Circuit is that both past and future attorney's fees are included in the amount in controversy so long as they are reasonable. *Stanley v. Lafayette Life Ins. Co.*, No. 3:13-CV-05137-MDH, 2015 WL 2062568, at *3 (W.D. Mo. May 4, 2015) ("While the Eighth Circuit has not yet addressed [whether future attorney's fees may be included in addition to the attorney's fees as of the date of removal], the majority of district courts within this circuit have held that attorney fees incurred post-removal are includable in the amount in controversy calculation so long as they are reasonable.").

24

58.     Evidence of verdicts in cases alleging similar causes of action may satisfy the burden of showing the amount in controversy. *Conner v. Minnesota Life Ins. Co.*, 2015 WL 13404335, at *1 (W.D. Mo. Sept. 2, 2015).

59.     Here, Plaintiffs have alleged eighteen separate and distinct MMPA claims. Violations of the MMPA may result in a plaintiff recovering compensatory and punitive damages, along with attorney's fees. *See* Mo. Rev. Stat. § 407.025.1.

60.     For the following reasons, a jury could legally award more than $75,000 on each claim should Defendants not prevail in this matter.

*i.*     ***Compensatory Damages***

61.     Each Plaintiff claims that they have suffered an ascertainable monetary loss, including actual and consequential damages. "Section 407.025.1 allows a plaintiff who has 'suffer[ed] an ascertainable loss of money or property' as a result of a breach of the MMPA to recover 'actual damages.' " *Shiplet v. Copeland*, 450 S.W.3d 433, 441 (Mo. Ct. App. 2014) "Although no Missouri cases outline the method the court should use in determining actual damages in an unlawful merchandising practices case," Missouri courts typically measure actual damages "using the lost benefit of the bargain rule." *Id.* Further, consequential damages are "those damages naturally and proximately caused by the commission of the breach and those damages that reasonably could have been contemplated by the defendant at the time of the parties' agreement." *Ullrich v. CADCO, Inc.*, 244 S.W.3d 772, 779 (Mo. Ct. App. 2008).

62.     Here, each Plaintiff alleges that they were denied the benefit of the timeshare(s) they were purportedly pressured into buying. The price of each contract for the applicable timeshares are set forth as follows:

| Count | Plaintiff(s) | Purchase Price |
|---|---|---|
| I | Brenda Atutonu King | Active contract for $105,739.00 |
| II | Robert and Mary Sacco | Active contract for $251,349.00 |
| III | Brenda and Bill Way | Active contract for $82,649.00 |
| IV | James and Mary Pounds | Active contract for $74,449.00 |
| V | Valerie Mathews | Active contract for $117,049.00 |
| VI | Ron and Gail Bergschneider | One active contract for $21,549.00; and another active contract for $11,549.00 |
| VII | Steve and Rita Cole | One active contract for $26,649.00; another contract for $22,849.00; another active contract for $109,249.00; and another active contract for $149,602.59 |
| VIII | Merle and Arlene Rudebusch | One active contract for $118,349.00; and another active contract for $58,049.00 |
| IX | James and Cheryl Owens | Active contract for $196,049.00 |
| X | Benjamin and Catalina Fuliar | One active contract for $165,849.00; another active contract for $251,197.76; and another active contract for $89,522.06 |
| XI | Rob and Jennifer Reaves[7] | Active contract for $190,149.00 |
| XII | Frank Pimentel | Last active contract was for $49,324.00 |
| XIII | Robert and Cynthia Shannon | One active contract for $11,250.00; another active contract for $10,500.00; another active contract for $26,749.00; and another active contract for $19,663.54 |
| XIV | Thomas Kohlbeck and Gay Hartfield[8] | Active contract for $260,849.00 |
| XV | Richard and Loretta Nance | Active contract for $17,149.00 |
| XVI | Roger and Rita Leake | Active contract for $191,349.00 |
| XVII | Cortez and Magaly Puryear | Active contract for $11,600.00 |
| XVIII | Dennis and Christina Tobin | Active contract for $21,549.00 |

*See* Exhibit B.

---

[7] The Plaintiffs allege their names are "Rob and Jennifer Reaves." Defendant does not have any owners in our system with these names. The only "Reaves" in Defendants' systems are "Robert Reaves" and his spouse, "Laurie Feldman Reaves." While it appears these are different parties, Defendants have included their information herein in an abundance of caution, until it can determine if the Reaves Plaintiffs are one and the same.

[8] Upon information and belief, Gay's surname is incorrectly spelled "Hartfield" and, instead, is actually spelled "Hartfiel."

26

## ii.  *__Attorney's Fees__*

63.    Under the MMPA, a prevailing plaintiff may recover attorney's fees "based on the amount of time reasonably expended." Mo. Rev. Stat. § 407.025.1.

64.    The starting point for attorney's fee awards is the amount of time reasonably spent on the matter multiplied by a reasonable hourly rate. *See Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 431-32 (Mo. banc 2013); *Selleck v. Keith M. Evans Ins., Inc.*, 535 S.W.3d 779, 784-85 (Mo. Ct. App. 2017).

65.    Though each Plaintiff does not allege the amount for attorneys' fees for each claim, it is possible to reach a reasonable estimate of the attorney's fees likely to be at issue. In *Berry v. Volkswagen Group of Am., Inc.*, 397 S.W.3d 425, 428 n.2 (Mo. banc 2013), the Supreme Court of Missouri affirmed an award on attorney's fees on an MMPA claim at rates of between $250 and $650 per hour.

66.    It is likely that a significant amount of time will be expended by both sides before the case is ready for trial. There are thirty-three individual Plaintiffs, all of which will need to be deposed in this matter. **Only two of the thirty-three individual Plaintiffs reside in Missouri.** Therefore, significant out-of-state travel will be involved to conduct these depositions. Defendants also recognize the likelihood that Plaintiff will want to take the depositions of the each Defendant, who also do not reside in Missouri. Further, the use of experts might be necessary for each side, with each expert having to be deposed. Thus, considering these depositions along with potential motion practice and other discovery, the amount of time reasonably likely to be expended and the amount of attorney's fees are likely to be substantial for each claim. *See* Mo. Rev. Stat. § 407.025.1.

27

67.     Indeed, fee awards in other recent MMPA cases support this conclusion. *See e.g.*, *Selleck v. Keith M. Evans Ins., Inc.*, 535 S.W.3d 779, 781-83 (Mo. Ct. App. 2017) (jury awarded a verdict of $10,000 on the plaintiff's MMPA claim and the trial court calculated attorney's fees based on an hourly rate to be $23,800 for that claim).

68.     Based on the foregoing, it is reasonable to conclude that this case will involve tens of thousands of dollars in attorney's fees per each Plaintiff's claim.

### iii.      *Punitive Damages*

69.     Each separate claim alleges that Defendants used deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact to sell timeshares to each Plaintiff. Further, each Plaintiff avers that such acts were willful, intentional, and malicious without just cause or excuse. The Defendants vigorously dispute all of these allegations. Nevertheless, each Plaintiffs' allegation are extremely serious and, if proven, could justify a substantial punitive damages award.

70.     "Previously under Missouri law, punitive damages were limited to the greater of (1) $500,000 or (2) five times the combined sum of actual damages and attorney's fees." *Baker v. NNW, LLC*, No. 15-00222-CV-W-GAF, 2015 WL 12843831, at *1 (W.D. Mo. June 1, 2015) (citing Mo Rev Stat. § 510.265, *declared unconstitutional by Lewellen v. Franklin*, 441 S.W.3d 136, 142-45 (Mo. banc 2014)). "In *Lewellen*, the Supreme Court of Missouri held that legislatively capping how much a plaintiff can recover in punitive damages violated the plaintiff's right to a jury trial. Therefore, under Missouri law it is now possible that plaintiffs may now recover *more* than five times the combined sum of actual damages and attorney's fees." *Id.* (internal citations omitted).

28

71.     Consistent with *Lewellen*, Missouri juries are given discretion to determine the amount of punitive damages. "[T]here is no mathematical formula applied to determine punitive damages and they need not bear any specific relationship to the actual damages received." *Finley v. Empiregas, Inc. of Potosi*, 975 F.2d 467, 472 (8th Cir. 1992). Again, verdicts in other MMPA cases demonstrate the possibility that a punitive damages award in excess of $75,000 could occur here for each claim:

      a.   In *Lewellen v. Franklin*, 441 S.W.3d 136 (Mo. banc 2014), the Supreme Court of Missouri affirmed an award of $1,000,000 in punitive damages on an MMPA claim with $25,000 in actual damages.

      b.   In *Kerr v. Vatterott Educ. Ctrs., Inc.*, 439 S.W.3d 802 (Mo. Ct. App. 2014), the court affirmed the award of $2,078,679.80 in punitive damages on a compensatory damages award of $27,696.76 and remanded the matter to the trial court to award appellate attorney's fees as well.

      c.   In *Peel v. Credit Acceptance Corp.*, 408 S.W.3d 191, 213 (Mo. Ct. App. 2013), a Missouri state court jury awarded $11,007.81 in compensatory damages on an MMPA claim with $1,187,505 in punitive damages, which was later reduced to $881,789.05.

      d.   In *Baker v. NNW, LLC*, No. 15-00222-CV-W-GAF, 2015 WL 12843831, at *2 (W.D. Mo. June 1, 2015), the court concluded that if there are $645,702.33 in actual damages, then it is possible for the plaintiffs to recover $215,234.11 in attorneys' fees and $4,139,064.56 in punitive damages on an MMPA claim.

      e.   In *VonDavid v. Blue Springs Ford Sales, Inc.*, Case No. CV04-205337-01 (Mo. Cir. May 26, 2010), a Missouri state court jury awarded $171,520 in compensatory damages on an MMPA claim with $1,750,000 in punitive damages. *See* **Exhibit C.**

72.     Although six of the Plaintiffs have active contracts with a purchase price of less than $75,000, upon factoring in the potential for punitive damages (and attorney's fees) these Plaintiffs' claims meet the jurisdictional threshold. For example, as to Count XVII asserted by Cortez and Magaly Puryer, while the Puyers have the smallest active contract among the Plaintiffs, a purchase price of $11,600.00, assuming a multiplier of 6.5 the amount of Plaintiffs'

claim could easily exceed $75,000. This multiplier is smaller than those applied in other cases asserting claims under the MMPA.

73.     In short, while Defendants dispute that each Plaintiff is entitled to *any recovery*, for removal purposes it has plausibly alleged in this Joint Notice that the amount of controversy exceeds $75,000 for each claim. Therefore, the jurisdictional threshold set by 28 U.S.C. § 1332 has been established by a preponderance of the evidence.

## II.     <u>THIS JOINT NOTICE IS PROCEDURALLY PROPER</u>

74.     This Joint Notice of Removal is timely because it was filed within thirty (30) days after the receipt of the Petition in the State Court Action by Defendants.  28 U.S.C. § 1446(b).

75.     This action is not one which is described in 28 U.S.C. § 1445.

76.     The Circuit Court of Taney County, Missouri is located within this District and Division.

77.     Promptly after filing this Joint Notice of Removal, Defendants will file a copy of the Joint Notice of Removal with the Circuit Court of Taney County, Missouri, and will serve a copy on all counsel of record.  *See* 28 U.S.C. §§ 1446(a) & (d).

78.     Defendants are not aware of any other process, pleadings, or other materials being served upon Defendants in the State Court Action, other than those included in Exhibit A attached hereto.

79.     Accordingly, removal of the State Court Action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446 is proper because this Court has jurisdiction over the action pursuant to 28 U.S.C. § 1332.

WHEREFORE, Defendants Wyndham Vacation Ownership, Inc. and Wyndham Vacation Resorts, Inc. remove the above-captioned civil action from the Circuit Court of Taney County, Missouri, to the United States District Court for the Western District of Missouri.

ARMSTRONG TEASDALE LLP

By: /s/ *David A. Jermann*

Darren K. Sharp                                    #50841
David A. Jermann                                 #51389
Matthew  R. Brunkhorst                       #64753
2345 Grand Boulevard, Suite 1500
Kansas City, Missouri 64108-2617
Telephone:  816.221.3420
Fax:  816.221.0786
dsharp@armstrongteasdale.com
djermann@armstrongteasdale.com
mbrunkhorst@armstrongteasdale.com

*Attorneys for Defendants Wyndham Vacation Ownership, Inc., and Wyndham Vacation Resorts, Inc.*

31